HOSHAW v. COSGRIFF et al.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1917.)

No. 4949.

1. CONTRACTS ☞93(2)—WRITTEN CONTRACTS—DEFENSES.

A person who, having the capacity and opportunity to read a contract, signs it without reading, cannot avoid the contract on the ground of mistake, where there were no special circumstances excusing his failure to read it.

2. EVIDENCE ☞441(8)—PAROL EVIDENCE RULE—ADMISSIBILITY TO VARY WRITTEN INSTRUMENT.

Where a written contract, signed by representatives of a corporation which subsequently became bankrupt, recited that a warranty deed executed by the corporation and placed in escrow should be delivered and become ·absolute in the event of the corporation's failure to comply with certain conditions, the contract cannot be changed by oral evidence under the circumstances above stated.

3. BANKRUPTCY ☞302(1)—PREFERENCES—WHAT CONSTITUTES.

A complaint attacking a warranty deed, executed by a corporation which subsequently became bankrupt, is insufficient to show that the. deed was voidable, as preferential, where it was not alleged that the grantees had reasonable cause to believe that to enforce the deed at the time it became absolute would effect a preference.

4. BANKRUPTCY ☞302(1)—COMPLAINT—INSTRUCTION.

In an action by trustee in bankruptcy to recover property conveyed by the bankrupt, a recital in the complaint that an involuntary petition in bankruptcy was filed, alleging that the warranty deed given by the bankrupt was given to prefer the grantee, the bankrupt being insolvent, is not a direct averment of those facts, sufficient to show that the transfer was preferential.

5. BANKRUPTCY ☞161(1)—PREFERENCES—VALIDITY.

A Wyoming bankrupt on February 21st conveyed land in Wyoming, the deed being recorded March 5th. An involuntary petition in bankruptcy was filed July 3d. Under Comp. St. Wyo. 1910, §§ 3653, 3654, the deed was valid, except as to subsequent purchasers in good faith, though not recorded. *Held* that, as such deed was executed more than four months before the filing of the petition, it was not subject to attack as preferential under Bankruptcy Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (Comp. St. 1916, § 9644), declaring that if a bankrupt shall have made a transfer of any of his property, and if at the time of the transfer, or of the recording or registering thereof, if by law recording or registering is required, and being within four months before the filing of the petition in bankruptcy, the bankrupt be insolvent, and the transfer, if preferential, shall be voidable by the trustee, there being no subsequent purchaser in good faith before the court.

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by William B. Hoshaw, successor to George W. Hoyt, as trustee in bankruptcy of the estate of the Cook Bros. Company, a bankrupt, against Rose M. Cosgriff, as administratrix, and others. From a ·judgment for defendants, plaintiff appeals. Affirmed.

The trustee in bankruptcy of the estate of Cook Bros. Company, a bankrupt, brought this action against appellees to recover certain property which it was claimed belonged to said estate. The appellees filed a motion to dismiss the complaint for want of equity. The motion was granted, and the trustee appealed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Omitting mere argument and legal conclusions, the complaint alleged among other things, the following facts:

That on December 31, 1910, the bankrupt became indebted to one Hirsig in the sum of $45,000, evidenced by two promissory notes, payable on or before five years from date, with interest at 8 per cent, per annum; that to secure the payment of said indebtedness the bankrupt executed and delivered to Hirsig on the above date a mortgage on certain real estate situated in Cheyenne, Laramie county, Wyo.; that said mortgage was duly recorded on the day of its date; that it was assigned to Charles W. Hirsig, March 7, 1911, the assignment being recorded October 28, 1911; that for 15 years prior to September 24, 1913, the bankrupt had close business relations with the First National Bank of Cheyenne, through its president, Thomas A. Cosgriff, its vice president, George E. Abbott, and its cashier, Albert D. Johnson; that by reason of such business relations the bank had obtained and held the implicit confidence and trust of the bankrupt; that on the day last aforesaid the bankrupt, being indebted to said bank in the sum of $18,500, to secure the payment of the same, executed and delivered to the bank a mortgage running to one T. H. Williams covering the same property as the Hirsig mortgage, and in addition thereto lot 7, in block 287, the mortgage being recorded on the day of its date; that on February 21, 1914, the bankrupt was in default as to the Hirsig and Williams mortgages, and Hirsig notified the bank and the bankrupt that if payment of his mortgage was not made the same would be foreclosed; that on the day last aforesaid the bank decided to pay the amount due on the Hirsig mortgage and add the amount so paid to its own debt against the bankrupt; that at the same time the bank requested that the bankrupt execute and deliver to it a warranty deed conveying all the real estate mentioned and described in the two mortgages; that the bankrupt complied with this request, the deed running to Thomas A. Cosgriff, as nominee of the bank; that said warranty deed was dated February 21, 1914, and recorded March 5, 1914; that the consideration for said conveyance was the debt of the bankrupt to the bank and the payment by the bank of the amount due under the Hirsig mortgage, together with taxes due upon the land; that at the same time the warranty deed was executed and delivered there was an agreement in writing entered into between the bankrupt, party of the first part, Thomas A. Cosgriff, party of the second part, Charles W. Hirsig, party of the third part, and the First National Bank, party of the fourth part. This agreement, after reciting the indebtedness of the bankrupt to the bank, the indebtedness due upon the Hirsig mortgage, and the taxes due to the city of Cheyenne and the county of Laramie upon the real estate covered by the mortgages, proceeded as follows:

"Whereas, the party of the third part has notified first party that he intends to foreclose his mortgage upon the real estate belonging to first party, and it is the desire of first party to secure further time in the matter of negotiating money with which to pay its obligations, and avoid foreclosure of the mortgage as aforesaid; and

"Whereas, the party of the second part is willing to accept a transfer of the real and personal property, and assume and agree to pay the indebtedness represented by the above-described mortgages and the taxes accrued and owing against said property, and the insurance provided for by said Hirsig mortgage, the said conveyance of said party of the first part to the party of the second part to be made, executed and placed in escrow with the party of the fourth part, and to become absolute on the 5th day of March, A. D., 1914, unless on or before said date the party of the first part shall pay the taxes due and owing upon said property, and the interest due and owing to the party of the third part, and the indebtedness to the said T. H. Williams; and

"Whereas, the party of the fourth part has been agreed upon by the parties hereto as the escrow agent to receive and hold the conveyance aforesaid under the terms of this agreement:

"Now, therefore, in consideration of the mutual covenants herein expressed, and in further consideration of the payment of one dollar each to the other, the receipt whereof is hereby confessed and acknowledged, the parties hereto do agree as follows, to wit:

"I. The party of the first part hereby agrees to make, execute, and place with said escrow agent good and sufficient warranty deeds and bills of sale of all its property, both real and personal, excepting its outstanding book accounts, to the party of the second part, coincident with the execution and delivery of this agreement upon consideration of one dollar paid by second party to first party, and the assumption and agreement to pay by second party of the above-described indebtedness represented by mortgages, and the taxes accrued against said property to the city of Cheyenne and county of Laramie, Wyoming, and the insurance provided for by the said Hirsig mortgage, said deeds and bills of sale to be placed in escrow with the party of the fourth part, with instruction to said party, which is hereby given, to deliver said deeds and bills of sale to said second party on the 5th day of March, A. D. 1914, at 3 o'clock in the afternoon of said day: Provided that on or before said date and time mentioned the party of the first part has not paid the interest due and owing to Charles W. Hirsig upon the notes and mortgages herein described, and the taxes herein set forth, and said indebtedness represented by the note and mortgage of T. H. Williams, and that in the event the party of the first part shall pay said interest and said taxes and said indebtedness to T. H. Williams, on or before said date and time herein mentioned, then and in that event the party of the fourth part is hereby authorized and instructed to return said deeds and bills of sale to the party of the first part.

"II. The party of the second part agrees to accept said deeds and bills of sale from the party of the first part herein set forth, and to pay to the party of the first part the said sum of one dollar, and to assume and agree in said instruments of conveyance to pay the said indebtedness evidenced by notes and mortgages of said Charles W. Hirsig, and the said T. H. Williams, together with the said taxes to the city of Cheyenne and county of Laramie, Wyoming, all in manner and form as set forth in paragraph I of this agreement, and said party of the second part further agrees that in the event the party of the first part hereto does not pay the interest due and owing to the said Charles W. Hirsig, party of the third part, together with the taxes due and owing to the county of Laramie and city of Cheyenne, on or before 3 o'clock in the afternoon on the 5th day of March, A. D. 1914, that then and in that event the said party of the second part will forthwith pay to the said Charles W. Hirsig, party of the third part, all interest due and owing to him upon the said mortgage of' first parties to third party, which amount is $3,600, with interest on said $3,600 at 8 per cent. from the 31st day of December, A. D. 1913, to the said 5th day of March, A. D. 1914, and also all taxes due and owing to the city of Cheyenne and county of Laramie aforesaid, and the insurance provided by said Hirsig mortgage.

"III. The party of the third part, in consideration of the aforesaid agreement of second party to pay all interest due and owing to the third party upon note and mortgage of first party on or before the 5th day of March, A. D. 1914, together with the taxes aforesaid and said insurance, hereby agrees to forego the foreclosure of his said mortgage against the property of the first party until the 5th day of March, A. D. 1914.

"IV. The party of the fourth part agrees to receive as escrow agent and safely keep the deeds of conveyance made, executed, and delivered by the party of the first part herein described, and to deliver same to the party of the second part or redeliver same to the party of the first part all and in accordance with the instructions and agreements contained herein."

That said party of the first part did not make the payments as stipulated in said agreement and thereupon the warranty deed was delivered to the grantee Cosgriff by the escrow holder; that the bankrupt, at the time the said warranty deed was executed and delivered, relied on the assurances then given by the bank, through its officers, that said Cosgriff would be a creditor of the bankrupt to the amount of all payments made under said warranty deed, and that said deed would be held by said Cosgriff by way of security only for the repayment of the money paid out in satisfaction of the mortgages; that notwithstanding the assurances given by the bank through its officers that the warranty deed would be held only as security, the bank with

premeditated and deliberate deceit, fraud, and cunning did insert or cause to be inserted in the above agreement certain provisions intending to show that the warranty deed was to be absolute in default of compliance by the bankrupt with its part of the above agreement; that said agreement and the contents thereof were unknown to the bankrupt prior to the time of signing the same, and said bankrupt was without legal advice as to the effect of the warranty deed and the agreement; that on March 5, 1914, the bankrupt took a lease of a certain portion of the land in question from said Cosgriff.

July 7, 1914, Hirsig assigned his mortgage to one Couzens. July 8, 1914, Williams also assigned to Couzens the mortgage dated September 24, 1913, for $18,500. Subsequently Couzens foreclosed the Hirsig mortgage, bought in the real estate described therein for $52,000, and received a sheriff's deed therefor, March 6, 1915. September 19, 1914, Cosgriff and wife conveyed the land described in the warranty deed to him from the bankrupt, except one-half of lot 4, block 356, to Hofman Bros., December 19, 1914; Cosgriff and wife conveyed said one-half of lot 4, block 356, to the Cheyenne Realty Company; that the realty company conveyed the land to Hofman Bros.; that the realty company is a subsidiary of the bank. March 9, 1915, Couzens and wife conveyed the land bid in by him to Cosgriff; that Cosgriff owned a majority of the stock of the bank and dictated all its affairs; that Williams and Couzens were at all times subject to the dictation and control of Cosgriff; that the conveyance made by the bankrupt to Cosgriff, dated February 21, 1914, divested the bankrupt of all its real estate to the prejudice of all its creditors; that on July 3, 1914, an involuntary petition in bankruptcy was filed against the bankrupt, alleging that the warranty deed given by the bankrupt to Cosgriff was so given with intent to prefer the bank, said bankrupt being then insolvent.

Henry E. Lutz, of Denver, Colo. (Wilfred O'Leary and Hilliard S. Ridgely, both of Cheyenne, Wyo., and George H. Karcher, of Denver, Colo., on the brief), for appellant.

John W. Lacey, of Cheyenne, Wyo. (Herbert V. Lacey, of Cheyenne, Wyo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

CARLAND, Circuit Judge (after stating the facts as above). Counsel for the trustee claim that the facts stated are sufficient to constitute a cause of action for the recovery of the real estate hereinbefore described upon either of three theories: (a) Neither the bank nor Cosgriff obtained title to the land by virtue of the foreclosure of the Hirsig mortgage, for the reason that the bank or Cosgriff was obligated to pay off the indebtedness, the nonpayment of which caused the mortgage foreclosure; (b) that the complaint alleges that the conveyance by the bankrupt to Cosgriff, although an absolute warranty deed in form, was in fact according to the agreement of the parties a mortgage; (c) that, if it be conceded that the conveyance by the bankrupt to Cosgriff for the benefit of the bank was absolute, still the complaint alleges facts which would constitute the conveyance a voidable preference.

[1-3] We are of the opinion that the question as to whether the bank or Cosgriff obtained title through the mortgage foreclosure may be put to one side, as we are of the opinion that the warranty deed by reason of the noncompliance of the bankrupt with the condition in the agreement agreed to be performed on its part became absolute.

The language of the agreement wherein it stated the condition upon which the warranty deed should become absolute was plain and unambiguous, and there is no allegation that the parties who executed the agreement in behalf of the bankrupt were not in the full possession of all their faculties. The agreement between the parties was put in writing for the very purpose of excluding oral testimony as to the terms of the contract, and it is elementary law that a contract completely reduced to writing cannot be contradicted, changed, or modified by parol evidence of what was said and done by the parties to it, prior to or at the time it was made. It is also elementary and the courts are unanimous in holding that a person, having the capacity and opportunity to read a contract, cannot avoid the contract on the ground of mistake, if he signs it without reading, where there are no special circumstances excusing his failure to read it. It is the duty of every contracting party to learn and know the contents of a contract before he signs and delivers it. To permit a party, when sued on a written contract, to admit that he signed it, but deny that it expresses the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The agreement is made an exhibit to the complaint, and the allegations of the complaint must be construed in connection with the exhibit. The complaint alleges that the bankrupt did not know the contents of the agreement prior to the time of signing the same. This allegation amounts to nothing, in view of the law above stated, and the further fact that the allegation above stated, properly interpreted, means that the bankrupt did know at the time of signing the contents of the agreement. We have no doubt but that the warranty deed became absolute according to the conditions of the memorandum agreement. The allegations in the complaint were insufficient to show that the execution and delivery of the warranty deed constituted a voidable preference. There was a total failure to allege that the bank or Cosgriff had reasonable cause to believe, at the time the warranty deed became absolute, that the enforcement thereof would effect a preference.

[4, 5] The allegation as to what the petition in involuntary bankruptcy alleged was not equivalent to a direct allegation of those facts, which would constitute the transfer evidenced by the warranty deed a voidable preference under section 60 of the Bankruptcy Law. It also appears that the warranty deed could not be attacked as a voidable preference, as it was executed more than four months prior to the filing of the involuntary petition. The deed was dated February 21, 1914, and recorded March 5, 1914. The involuntary petition was filed July 3, 1914. The law of Wyoming (sections 3653, 3654, Wyoming Compiled Statutes 1910) did not require the warranty deed to be recorded in order to be valid except as to subsequent purchasers in good faith, and no such person is before the court; therefore the four months mentioned in said section 60 ran from the date of the deed, and not from the date of recording the same. Carey v. Donohue, 240 U. S. 430, 36 Sup. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295. So far as First National Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, and Mattley v. Geisler, 187 Fed. 970, 110 C. C. A. 90,

announce a contrary rule they have been overruled by Carey v. Donohue, supra.

This being our view of the law as applied to the facts, it results that the judgment below must be affirmed; and it is so ordered.