**UNIVERSITY OF THE VIRGIN ISLANDS, Appellant,**

v.

**Josephine PETERSEN–SPRINGER, Appellee.**

**No. CIV.A.1999–199.**

District Court, Virgin Islands,
Appellate Division
D. St. Thomas and St. John.

Considered: Nov. 30, 2001.

Oct. 2, 2002.

Samuel H. Hall, Jr., Esq., Marie E. Thomas, Esq., St. Thomas, for Appellant.

Desmond L. Maynard, Esq., Shawn E. Maynard–Hahnfeld, Esq., St. Thomas, for Appellee.

Before: FINCH, Chief Judge, District Court of the Virgin Islands; MOORE, Judge of the District Court of the Virgin Islands; and CABRET, Presiding Judge of the Territorial Court, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

The University of the Virgin Islands appeals the jury verdict in favor of Josephine Petersen–Springer. A review of the record, the pleadings, and all other relevant documents reveals that the trial judge erred in not finding, as a matter of law, an express contract between the parties, and in submitting equitable claims to the jury without making independent findings of fact. Accordingly, this Court will vacate the judgment below and remand for a new trial.

## I. FACTUAL BACKGROUND

The following facts are undisputed. In August 1988, Josephine Petersen–Springer ["Springer" or "appellee"] entered into a contract with the University of the Virgin Islands ["University" or "appellant"] whereby she agreed to work from September 12, 1988, to September 30, 1989, as "Program–Leader—Home Economics." Springer's duties under this position included "planning, developing and executing Extension educational programs in home economics on all three U.S. Virgin Islands." Springer was also expected to provide leadership for the home economics program throughout the schools and com-

munity of the territory. Her salary was set at $34,662 per year. (J.A., Vol. I at 7.)

Two months after Springer commenced her appointment with the University, Dr. Darshan Padda ["Padda"], Springer's immediate supervisor, approached her and requested that she undertake the additional duties of acting leader for the 4–H Youth Development Program. This position required Springer to supervise an additional six people in the 4–H Program. (*See id.* at 302–05, 333 (Def.'s Mot. for Summ. J., Ex. P, Springer's Dep.).) Padda asked Springer to assume these duties because Zoraida Jacobs ["Jacobs"], the previous 4–H Program Leader, had taken study leave in late 1988 and needed additional time to complete her studies. Consequently, Springer ultimately served as acting Program Leader for the 4–H program from November 15, 1988, until September 30, 1991.

On November 2, 1988, Springer and the University executed a formal, written addendum to Springer's first-year contract through September 30, 1989. The addendum changed Springer's title from "Program Leader, Home Economics to Program Leader, Home Economics and Acting Program Leader, 4–H/Youth Development." Reciting that this change in title would be effective November 15, 1988, and would "not include a change in salary at this time," the addendum expressed the University's thanks for Springer's cooperation in "accepting this new assignment." (*Id.* at 10.) Half-way through her initial contract, in March of 1989, the University Board of Trustees approved a consolidated pay plan under which Springer's job title was changed to "Research Assistant Professor (Extension–Home Economics)," and her salary was raised to $35,055, retroactive to October 1, 1988. (*Id.* at 251 (Def.'s Mot. for Summ. J., Ex. C).)

In October 1989, the University and Springer negotiated a second contract reappointing her as "Research Assistant Professor (Extension—Home Economics)" from October 1, 1989 to July 31, 1990. (*Id.* at 13–14.) Springer renewed her contract at $35,055 for this ten-month period without requiring additional pay for her duties as acting program leader for the 4–H program. The contract did acknowledge that a "merit step" would be awarded for very good performance during the 1988–1989 academic year, contingent upon the receipt by the University of the "necessary funds through the approval and allocation of the University's operating budget." (*Id.*)

In July 1990, Springer agreed to work for the University for a third year, and was again reappointed to "Research Assistant Professor (ExtensionHome Economics)" at an annual salary of $36,107. As with her contract for the 1989–1990 academic year, Springer was informed that a three-percent merit increase would be awarded for very good performance for the previous year, contingent upon the receipt by the University of the necessary funds. (*Id.* at 17–18.) Springer again did not negotiate any additional compensation for continuing as the acting 4–H Program leader. During the term of this contract, however, Springer received a classification/salary increase, raising her salary from $36,107 to $42,468. (*Id.* at 368–69 (Def.'s Mot. for Summ. J., Ex. Q, Dep. of Jessie Clark).)

Finally, in the summer of 1991, Springer for the first time asked Padda about receiving additional compensation for serving as acting 4–H Program Leader. Dr. Padda informed her that she would not be paid additional money for her work in this capacity. After Padda, on two occasions, insisted that she was not entitled to any additional pay, Springer then advised Padda that she would continue to work as 4–H

Program Leader through that summer, and, effective September 1, 1991, she would cease to do so. (See *id.* at 335–37 (Def.'s Mot. for Summ. J., Ex. P, Springer's Dep.).)[1] The next month, Springer wrote a letter to the University's Human Resources Manager asserting a grievance for additional compensation. (*Id.* at 262–63 (Def.'s Mot. for Summ. J., Ex. J).)

## II. PROCEDURAL HISTORY

Springer sued the University of the Virgin Islands for (1) breach of contract, (2) *quantum meruit,* and (3) promissory estoppel. (J.A., Vol. I at 163–72 (Am. Compl.).) In an amended complaint, Springer alleged that the University formally contracted her to work for it as Acting 4–H Program Leader from 1988–1991, with the understanding that she would be paid for her services for the additional work. (*Id.* at 164.) Springer alleged that, in 1988, the 4–H Program Leader who was on sabbatical was paid approximately $38,000 per year. In addition, Springer stated that she had to work weekends, holidays, and evenings to perform both positions. (*Id.*) Alternatively, Springer argued that she was entitled to compensation based on *quantum meruit* and detrimental reliance grounds. (*Id.* at 166.)

The University moved for summary judgment, arguing that Springer was not entitled to relief under contract, *quantum meruit,* or detrimental reliance theories. (*Id.* at 223–45 (Mem. of Law in Supp. of Def.'s Mot. for Summ. J.).) With respect to the breach of contract claim, the University argued that Springer agreed to serve as both Home Economics Program

Leader and acting 4–H Youth program leader without any additional compensation. The University contended that the plain language in her initial contract as amended by the addendum left open only the possibility of future salary negotiations, but that no contract providing she would receive additional compensation was ever negotiated. Averring that Springer relied solely on the unambiguous language of the contract addendum and not any additional written or verbal statement, the University argued that the facts were undisputed and the issue was purely a matter of law to be decided by the trial judge. (*Id.* at 237–39.)

With respect to her other claims, the University contended that Springer was not entitled to *quantum meruit* relief because she had negotiated a series of explicit one-year written agreements that set forth what the University agreed to pay her. The University argued that Springer could not recover under a theory of promissory estoppel because there was no "objectively clear promise," and that she did not materially change her position in reliance on any such alleged promise. The appellant contended that Springer did not suffer any detriment by serving as acting program leader for 4–H. Conversely, the University argued that Springer actually benefitted from serving in the dual capacity because she received a merit increase and salary upgrades, and that Springer "was not asked to do any more than what other managers at the University and elsewhere are called upon to do." (*Id.* at 239–41.)

1. In September 1991, Springer was rehired by the University for a fourth year as Home Economics Program Leader for the 1991–1992 administrative year, and her salary was set at $42,468. In July 1992, Padda rehired Springer on another one-year contract as Home Economics Program Leader for the 1992–1993 school year at a salary of $42,468. (*See* J.A., Vol. I. at 21–22, 264 (Def.'s Mot. for Summ. J., Ex. K).) Neither of these years is at issue here.

Springer countered that she was entitled to relief on the basis of *quantum meruit* because, although she entered into contracts with the University from 1988 through 1991, these contracts referred only to her position as Research Assistant in the Home Economics Department, and not to her position as Acting 4–H Program Leader. Springer averred that she was entitled to recover on a promissory estoppel basis, as the November 2, 1998, addendum contained an implicit promise to compensate her for the position as acting 4–H Program Leader. In addition, she maintained that she adversely relied on this promise, as she worked long hours on the weekends and had to leave her children with babysitters in order to fulfill the job requirements of both positions. (*Id.* at 420–34 (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J.).)

The trial judge orally denied the University's Motion for Summary Judgment from the bench. (*See* J.A., Vol. II at 828–35.) The case then proceeded to trial before a jury on Springer's claims of breach of contract, unjust enrichment, and promissory estoppel. Springer testified that the contracts entered into by herself and the University applied solely to her work as the Home Economics Program Leader, but did not cover her work as acting 4–H Program Leader. (*See id.* at 885, 992, 100, 1004, and 1041–42.) Springer stated that, a couple of months into the 1988–1989 school year, Dr. Padda asked her to assume the position of acting program leader for the 4–H. She stated that the original 4–H program leader was on study leave, and that the University was having problems with the acting program leader in 4–H, Darwin King. (*Id.* at 920–21.) With respect to the addendum to the 1988 contract, Springer testified that she interpreted the language to mean that she would be compensated "some time down the road" for her work with the 4–H Program. (*Id.* at 914.)

After Springer's case-in-chief, the University moved for judgment as a matter of law as to all counts. (J.A., Vol. III at 1398.) The University contended that Springer was asserting a contract, as opposed to an equitable claim, and moved to dismiss the equitable claims of *quantum meruit* and promissory estoppel. (*Id.* at 1398–99.) The trial judge noted that "if the jurors find that there is a contract, then anything about *quantum meruit* will have to be knocked out." (*Id.* at 1403.) The trial judge then discussed the ambiguity in the addendum's language, and denied the motion. (*Id.* at 1419–26.)

After both sides had presented their evidence, the University again moved for judgment as a matter of law, again arguing that Springer's equitable claims should be dismissed because the evidence established the existence of a contract between the parties and the language in the addendum was clear and unambiguous. (*See* J.A., Vol. IV at 1631–36.) Springer countered that the addendum did not constitute a contract because it was unsupported by consideration. (*Id.* at 1641–50, 1659.) She then moved to withdraw her breach of contract claim, and, without objection from the appellant, the trial judge granted the motion, leaving only the equitable claims of *quantum meruit* and promissory estoppel. (*Id.* at 1660–61.)

The judge nevertheless instructed the jury not only on the law of *quantum meruit* and detrimental reliance, but also on the law of contract formation and contract interpretation, as well as on the remedies for both breach of contract and *quantum meruit*. (*Id.* at 1927–54.) The judge informed the jury that if it found that a contract existed between Springer and the University, for any one of the three years in question, then it could not find for

Springer on a *quantum meruit* basis. (*Id.* at 1958–59.)

### A. The Jury's Verdict and the University's Motion for Judgment Notwithstanding the Verdict

The jury returned a verdict in favor of Springer, finding that no contract existed between the parties with respect to Springer's role as acting 4–H Program Director for each of the years from 1989 through 1991. The jury found Springer entitled to compensation on a theory of *quantum meruit* as follows:

(1) For the 1988–89 school year: $35,055
(2) For the 1989–90 school year: $36,107
(3) For the 1990–91 school year: $38,864

(*Id.* at 1966–67.) After dismissing the jury, the trial judge expressed concern about whether Springer's equitable claims of *quantum meruit* and detrimental reliance should have gone to the jury. (*Id.* at 1973–82.)

The University moved the trial court for judgment notwithstanding the verdict, or in the alternative for a new trial or remittitur. The appellant contended that (1) recovery on a *quantum meruit* basis was erroneous because the evidence established the existence of three one-year contracts between the parties; (2) the language in the addendum did not constitute a promise of additional compensation; (3) the jury's finding that there was the lack of an express contract was unsupported by the evidence; (4) the jury award of damages was unsupported by the evidence; and (5) the equitable claims should not have been submitted to the jury. (J.A., Vol. II at 684 (Mot. for J. Notwithstanding the Verdict).)

The trial judge denied the University's motion in a written opinion, concluding that there was sufficient evidence supporting the jury verdict. (*Id.* at 791–811 (Mem. Op., Terr. Civ. No. 469/1994 (Oct.

26, 1999)).) Without specifically adopting the jury's findings or pronouncing his own independent judgment, the judge merely found that (1) Springer worked in a dual capacity for the University, but was never compensated for her work in the 4–H Program; (2) she was led to believe that she would be paid for the second position at some future date, (3) she relied on this representation to her detriment, (4) the University was unjustly enriched, and (5) the jury verdict did not "shock the conscience" of the court and thus, did not warrant a remittitur. (*Id.* at 795–809.)

## III. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over the University's appeal pursuant to V.I. CODE ANN. tit. 4, § 33.

### B. Issues on Appeal

On appeal, the University argues that the trial judge erred in permitting this matter to proceed before a jury on the conflicting claims of breach of contract and *quantum meruit* or promissory estoppel. The appellant avers that the trial judge should have determined, as a matter of law, whether there was a contract at issue in this case for each of the three years in question *before* trial. In addition, the University argues, *inter alia*, that (1) the language in the addendum clearly and unambiguously modified the first year contract only; (2) the language in the addendum did not constitute a promise of additional compensation; (3) the evidence indicated that Springer did not detrimentally rely on the alleged promise; (4) the trial judge erred in permitting the equitable claims of *quantum meruit* and detrimental reliance to be considered by the jury; (5) the trial court erred in denying its motion for remittitur; and (6) the trial judge erred in denying its motion for a new trial. The

appellant requests that the jury verdict and trial judge's denial of its judgment notwithstanding the verdict be vacated and judgment entered in favor of the appellant. Alternatively, the University avers that its motion for a new trial and for remittitur should be granted.

Springer counters that the trial judge properly denied the appellant's motion for a new trial because the evidence established that there was no express contract between the parties concerning her position as 4–H Program Leader. She asserts that the addendum does not constitute a contract because it is not supported by consideration and is nothing more than an illusory promise. Springer also avers that the jury's verdict was supported by the evidence, and that the trial judge's independent findings of fact and legal conclusions bar a new trial, as there was not prejudicial error.

In its reply brief, the University again maintains that there is an express contract concerning Springer's dual capacity, and that the contract is adequately supported by consideration. Furthermore, the appellant insists that the trial judge did not make independent findings of fact in his post-trial memorandum denying its motion for a new trial, and that the judge merely considered the evidence in the light most favorable to Springer.

### C. Whether the Trial Judge erred in Denying the University's Motions for Summary Judgment, Directed Verdict, and Judgment Notwithstanding the Verdict

The University appeals the trial judge's denial of its motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. In all three, the appellant averred that there existed an explicit, unambiguous contract covering Springer's work as 4–H Program Leader

and that there was no breach of contract. In addition, the University maintained that, because of the existence of a contract, Springer's claim for *quantum meruit* relief could not proceed.

We review the grant or denial of summary judgment de novo. *See Hodge v. McGowan,* 29 V.I. 142, 147, 1993 WL 723699 (D.V.I.App.Div.1993). Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *See* FED. R. CIV. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When deciding whether the movant has proved that no material factual dispute prevents judgment in its favor, the Court must regard the facts asserted by the non-movant through affidavits and evidence as true and resolve any doubt in that party's favor. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir.1996); *Desvi, Inc. v. Continental Ins. Co.,* 968 F.2d 307, 308 (3d Cir.1992).

In reviewing the trial court's denial of a directed verdict, this Court is required to determine whether, as a matter of law, "the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief.... If the evidence is of such character that reasonable [persons], in the impartial exercise of their judgment may reach different conclusions, the [count] should be submitted to the jury." *J.I. Hass Co. v. Gilbane Bldg. Co.,* 881 F.2d 89, 92 (3d Cir.1989) (alteration in original) (quoting *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978)).

Finally, when reviewing a district court's denial of a judgment notwithstanding the verdict, we review the record in the light most favorable to the non-moving party, and affirm the court's denial of the motion "unless the record is 'critically deficient of that minimum quantity of evidence from which the jury might reasonably afford relief.'" *Id.* (quoting *Link v. Mercedes–Benz of N. Am. Inc.,* 788 F.2d 918, 921 (3d Cir.1986)).

### 1. The 1988 Addendum Constituted a Legally Binding Contract Covering the Terms of Springer's work as Acting 4–H Program Leader for the 1988–1989 Academic Year

■ The parties do not dispute the existence of three one-year contracts that set forth the salary for Springer's work as the Director of the Home Economics Department. Instead, they dispute whether a contract existed for each of these three years for Springer's work as Acting Director of the 4–H Program. The only written expression of her work in this capacity is the addendum to her 1988 contract, which provided:

> This is an addendum to your contract, issued on July 22, 1988, to change your title from Program Leader, Home Economics to Program Leader, Home Economics and Acting Program Leader, 4–H/Youth Development. This new change in title will be effective November 15, 1988, and *will not include a change in salary at this time.*
>
> Your cooperation in accepting this new assignment is greatly appreciated.

(J. A., Vol. I at 10) (emphasis added.) Springer relied solely on this language to support her breach of contract and equitable claims, and acknowledged that there was no extrinsic evidence indicating the University's intention to compensate her for her work in the 4–H Program.

On the one hand, the University maintains that the trial judge erred in not finding a binding contract between the parties. The University insists that the addendum is a contract supported by consideration, but that it does not require the University to pay the appellee any additional money for working as acting program leader of the 4–H. On the other hand, Springer contends that the addendum language obligates the University to compensate her, but that it does not constitute a contract because it was not supported by consideration.

■ The question of contract "construction," rather than contract "interpretation," is one of law and is freely reviewable by an appellate court. *See Ram Constr. Co. v. American States Ins.,* 749 F.2d 1049, 1053 (3d Cir.1984). The Restatement (Second) of Contracts ["Restatement"], which has been adopted by the Legislature of the Virgin Islands, is the source of controlling law in this jurisdiction.[2] According to the Restatement, the formation of a contract requires "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement § 17. "Consideration" requires a performance or a return promise that has been bargained for. *Id.* § 71.

■ As Springer correctly, points out, a preexisting legal duty does not constitute consideration. The Restatement provides that "[p]erformance of a legal duty owed to

---

**2.** Title 1, section 4 of the V.I.Code provides: The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.
1 V.I.C. § 4.

a promisor which is neither doubtful nor the subject of honest dispute is not consideration." *Id.* § 73. The Restatement gives the following illustration:

A promises to pay a debt to B, or to perform an existing contractual duty to B, or to perform his duty as a public official. The legal duty is neither doubtful nor the subject of honest dispute, but A would not have fulfilled the duty but for B's return promise. A's promise is not consideration for B's return promise.

*Id.* § 75, cmt. c, illus. 1.

At first blush, Springer may appear to have the stronger argument, in that the University was already legally obligated to pay her the salary of $34,662 under the July 22, 1988, contract for her work as Home Economics Program Leader and this preexisting legal obligations could not be consideration for the addendum. Springer, however, overlooks an exception to the "preexsiting duty rule." As the University points out, the addendum is really a *modification* of a preexisting contract. Under contract law in this jurisdiction, a "promise modifying a duty under a contract not fully performed on either side is binding ... if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made ...." *Id.* § 89 (Modification of Executory Contract). This subsection applies to bargains such as this one, that are without consideration only because of the rule that performance of a legal duty to the promisor is not consideration. *See id.* § 89 cmt. a. The "fair and equitable" provision makes clear that there must be "an objectively demonstrable reason for seeking a modification." *Id.* § 89 cmt. b. Under section 89(a), the reason for modification must rest in "circumstances not anticipated." If we find such a reason, we must then consider (1) the relative financial strength of the parties, (2) the

formality with which the modification was made, (3) the extent to which it was performed or relied on, and (4) other circumstances relevant to show or negate imposition or unfair surprise. *Id.* § 89(a).

Applying these standards, the University's need for an Acting 4–H Program Leader clearly was unanticipated. The University asked Springer to work as the 4–H program leader because the former leader was on study leave, and required additional time to complete her studies. Springer confirmed that she was approached about the position because the University was having difficulties with the faculty member they originally chose to replace the 4–H Director. Although the University was the financially stronger party, Springer expressly agreed to perform the role according to the formal addendum to her contract, and the University relied on her agreement to act as 4–H Leader. Indeed, her title was amended to include that role. The circumstances which show and negate imposition by the University or unfair surprise to Springer are that Springer had worked as Home Economics Program Leader for only two months when the addendum was written, and, over the three years from 1989–1991 she was silent and raised no objection and made no claim for additional pay and accepted the increases in pay, again without complaining that it was inadequate. Since there was "an objectively demonstrable reason for seeking a modification," we conclude that the modification was "fair and equitable" and constituted a legally binding modification to Springer's 1988–1989 contract.

The language in the addendum clearly and unambiguously expressed the agreement between Springer and the University that she was not to receive any additional compensation for serving as 4–H Program Director for the 1988–1989 academic year.

The addendum states that her change in title would "not include a change in salary at this time." This plain language indicates that there was the possibility of future salary negotiations, but that no agreement was reached on the subject. Accordingly, the University did not breach its contract with her. Because the trial judge had these facts at the summary judgment and directed verdict stages, this Court finds that the trial judge erred in denying that the 1988–1989 contract covered her duties as acting 4–H Program Leader and in submitting this legal determination to the jury for decision.

■ The addendum, however, was attached only to Springer's contract for the 1989–1990 school year, and not to her contracts for the subsequent academic years. This single addendum does not reference her work for the 1989–1990 or 1990–1991 administrative years. Moreover, Springer's subsequent employment contracts for her position in the Home Economics Program make no mention of the 4–H position. This Court, therefore, finds that there was no contract covering Springer's work as acting program leader for the 4–H for the 1989–1990 and 1990–1991 school years.

### 2. Springer's Equitable Claims should not have been Submitted to the Jury

■ The trial judge obviously erred in submitting Springer's equitable claims to the jury and upholding the jury's judgment without making his own independent factual findings. He specifically stated that he would not substitute his findings of fact for those of the jury, and deferentially reviewed its verdict. We thus conclude that it was reversible error to submit the equitable claims to the jury.

■ "*Quantum meruit* is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." *Hershey Foods Corp. v. Chapek*, 828 F.2d 989, 998 (3d Cir.1987) (internal quotations omitted). "An action brought on a theory of *quantum meruit* sounds in restitution [and, therefore,] the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Id.* at 999 (internal citations omitted).

■ The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "The word 'preserved' demands a historical inquiry to determine whether the suit, if filed in the English courts before 1791, would have fallen within the jurisdiction of law or equity." *Newfound Management Corp. v. Lewis*, 131 F.3d 108, 114 (3d Cir. 1997). Although actions at law entitle a party to a jury trial, cases in equity do not. *Id.* at 115. The Supreme Court has held, however, that

> where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims.

*Ross v. Bernhard*, 396 U.S. 531, 537–38, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

The Seventh Amendment applies in civil actions brought in the Virgin Islands.[3] Al-

---

**3.** *See* Revised Organic Act of 1954 § 3, 48 U.S.C. § 1561. The complete Revised Organ-

though Springer was entitled to a jury trial on her breach of contract claim, she withdrew that right along with her contract claim. Hence, we can affirm the trial judge's acceptance of the jury's verdict on the equitable claims only if he made his own independent findings and judgments. *See Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 471–72 (3d Cir. 1990) (noting that, where jury granted equitable relief in the form of an injunction, "the district court properly supplied its own factual findings to supplement the jury's verdict").

Here, the trial judge, in denying the University's posttrial motions, noted that

the Court is mindful of the fact that the determination of credibility and weight of the evidence adduced at trial is the function of the trier of fact alone, which in this case is the jury. *Therefore, the Court will not substitute its judgment for that of the jury, recognizing that a jury verdict contains the benefit of all reasonable inferences capable of being drawn therefrom.*

(J.A., Vol. II at 796 (Mem. Op., Terr. Civ. No. 469/1994 (Oct. 26, 1999)) (emphasis added).) The trial judge then found that there was "ample evidence" to support the jury verdict compensating Springer for her work as Acting 4–H Program Leader. (*Id.* at 806–07.)[4] The trial judge committed reversible error by not making his own, independent findings of fact.

## III. CONCLUSION

Because the parties' contract for the 1988–1989 academic year expressly covered Springer's extra duties as acting leader for the 4–H program, we hold that the

trial judge erred in not making this legal determination and in submitting the issue for this year to the jury. We similarly rule that it was reversible error to submit any of Springer's equitable claims to the jury for decision. We accordingly will vacate the jury's verdict and remand the case for further proceedings in accordance with this opinion.

---

ic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

4. Since a new trial is necessary, we do not reach the University's other arguments that the jury's verdict is unsupported by the evidence and the jury's award of damages was unreasonable and grossly excessive.