**Miriam SAPIRO Plaintiff,**

v.

**VERISIGN Defendant.**

**No. CIV.A.03–773(EGS).**

United States District Court, District of Columbia.

March 26, 2004.

Richard A. Salzman, Heller, Huron, Chertkof, Lerner, Simon & Salzman, PLLC, Washington, DC, for Plaintiff.

Larry R. Seegull, Piper Rudnick LLP, Baltimore, MD, for Defendant.

## *MEMORANDUM OPINION*

SULLIVAN, District Judge.

### *I. Introduction*

Plaintiff, Miriam Sapiro, brings this action against her former employer, VeriSign. Plaintiff alleges that defendant discriminated against her because of her family responsibilities and retaliated against her in violation of the District of Columbia Human Rights Act, D.C.Code § 2–1402.11 *et. seq.* (2001). Defendant VeriSign filed this Motion to Compel Arbitration alleging that plaintiff executed an Arbitration Agreement with defendant and that this litigation is in violation of that Agreement. Thus, defendant requests that this Court compel arbitration and dismiss this case or, alternatively, stay this litigation while the arbitration is pending.

### *II. Factual Background*

Plaintiff was hired in November 2000 to serve as VeriSign's Director of International Policy. Plaintiff's employment offer letter was made on Network Solutions Inc. ("NSI") letterhead and stated that NSI was a wholly-owned subsidiary of VeriSign.

From 1995 to June 2000, Science Applications International Corporation ("SAIC") either owned or was a significant shareholder in NSI. As part of that arrangement, SAIC supported NSI's human

resource function and NSI used many of SAIC's forms, including the Dispute Resolution Guide and the Arbitration Agreement. In June 2000, VeriSign acquired NSI. Rather than create new forms, VeriSign continued to use the forms bearing the SAIC insignia and continued to distribute SAIC's Dispute Resolution Guide.

When plaintiff attended the New Employee Orientation, plaintiff was presented with several documents—some bearing the name of SAIC and some bearing the name of NSI. One of those documents was a seventeen page Dispute Resolution Guide. The Dispute Resolution Guide describes a comprehensive program for challenging disputes with management, which included multiple internal appeals, investigations, mediation, and arbitration. In accordance with the Dispute Resolution Program, and as a condition of employment, plaintiff was required to sign a "Mutual Agreement to Arbitrate Claims," whereby plaintiff agreed to arbitrate any claims or controversies including claims for discrimination or retaliation. This Agreement was signed on November 27, 2000. Plaintiff concedes that she signed this Agreement but argues that VeriSign, her current employer, was not a party to the Agreement. Rather, the employer listed on the Mutual Agreement to Arbitrate Claims and the author of the seventeen page Dispute Resolution Guide was SAIC.

Six months after plaintiff began working for VeriSign, VeriSign issued its own employee handbook making clear that it no longer had a relationship with SAIC. The new employee handbook, called the Navigator, contains no dispute resolution program, no agreement to arbitrate, and no mechanism for challenging decisions made by management. Instead, the Navigator emphasized that management decisions were "final and binding on all concerned." The Navigator also stated that it "supersedes" other inconsistent employment manuals.

On April 24, 2002, defendant eliminated plaintiff's position. Plaintiff claims that her position was eliminated in retaliation for her request for a flexible working arrangement. Plaintiff brings this lawsuit to enforce her rights under the D.C. Human Rights Act. Defendant maintains that plaintiff has brought her claims in the wrong forum. Defendant contends that complaints of discrimination and retaliation are covered by the Arbitration Agreement and must be arbitrated.

Plaintiff submits that there is no arbitration agreement to enforce because VeriSign was not a party to the Agreement plaintiff signed and, regardless, VeriSign could not perform its requirements under the Agreement. Defendant alleges that plaintiff knew that she was signing an agreement with NSI/VeriSign and that VeriSign can perform under the signed Agreement.

### III. Discussion

*A. The decision-maker on the issue of arbitrability*

■ The question of whether or not the claim should be arbitrated is a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Defendant claims that the parties agreed to submit questions of arbitrability to the arbitrator. In support of its argument, defendant submits that the SAIC Employment Arbitration Rules & Procedures Section M notes, "[t]he arbitrator has the authority to resolve any dispute relating to the formation, interpretation, applicability or enforceability of the Arbitration Agreement." Def.'s Mot. Attach. 4, Ex. 1 at C–4. Thus, defendant claims that this case should be dismissed so that an arbitrator can decide if plain-

tiff's claims are subject to the Arbitration Agreement.

It is well settled, however, that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide" based on state contract law. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002). District of Columbia contract law has stated that "the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contract between the parties." *Bailey v. Federal Nat. Morg. Ass'n.*, 209 F.3d 740, 746 (D.C.Cir.2000).

Here, because there needs to be a determination as to whether the Arbitration Agreement establishes a valid contract between the parties at issue, this Court, rather than an arbitrator, is the proper entity to make that determination.

*B. Arbitration is the appropriate procedure for resolving plaintiff's claims.*

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2000). The Supreme Court has held that FAA's coverage extends to employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The FAA provides that when a court is presented with a dispute covered by an arbitration agreement, the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Thus, the Court is called upon to determine (1) whether the parties entered into a binding and enforceable arbitration agreement; and if so, (2) whether the arbitration agreement encompasses the claims that plaintiff raised in her complaint. "Under District of Columbia law, the party asserting the existence of a contract to submit disputes to arbitration has the burden of proving its existence." *Bailey v. Federal Nat. Morg. Ass'n.* 209 F.3d 740, 746 (D.C.Cir.2000). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson v. Insignia/Esg, Inc.* 215 F.Supp.2d 143, 149 (D.D.C.2002). Thus, here, defendant has the burden of proving that the parties entered into a valid arbitration agreement. If defendant is successful, plaintiff must then prove that the Agreement does not encompass her complaints or she will be compelled to arbitrate. Because the Court is persuaded that a binding and enforceable agreement exists and the Court is not persuaded that plaintiff's complaints are not suitable for arbitration, the Court will grant the defendant's motion to compel arbitration.

*1. The existence of a binding and enforceable arbitration agreement.*

Under District of Columbia law, "a signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Emeryone v. Caci International, Inc.*, 141 F.Supp.2d 82, 86 (D.D.C.2001)(citing *Davis v. Winfield*, 664 A.2d 836, 838 (D.C.1995)). In *Emeryone*, the plaintiff, like the plaintiff here, was an attorney.

Plaintiff notes that the D.C. Circuit reviewed an arbitration agreement between a plaintiff and a third party and concluded that, because the employer was not a party

covered by the arbitration provision, it could not compel arbitration of the discrimination claims. *Gardner v. Benefits Communications Corp.*, 175 F.3d 155, 159–160 (D.C.Cir.1999). Thus, in order for this court to compel arbitration, this Court must find that VeriSign is properly a party to the Agreement.

◼ A contract should be read so as to honor the intent of what a reasonable person, in the position of the parties at the time the contract was executed, would have thought. *Patterson v. District of Columbia*, 795 A.2d 681, 683 (D.C.2002). Defendant argues that it was plaintiff's and VeriSign's intent to be bound by the Agreement between this employee and this employer.

◼ The Arbitration Agreement provides that "[a]ny reference in the Agreement to SAIC will also be a reference to all subsidiaries and affiliated corporations . . . and the successors and assign of any of them." VeriSign is a successor to NSI, which was previously an affiliate and/or subsidiary corporation of SAIC.

Moreover, because both parties thought employee and employer were entering into the Agreement, the equitable remedy is to hold both parties to that bargain. *See Isaac v. First National Bank of Maryland*, 647 A.2d 1159, 1163 n. 10 (D.C.1994). Thus, VeriSign is permitted to enforce the Agreement against plaintiff, just as plaintiff would have been permitted to enforce the Arbitration Agreement against VeriSign.

Plaintiff claims that even if the agreement was valid, this Court should not require plaintiff to perform because defendant is unable to perform its part of the bargain—it cannot provide the comprehensive dispute resolution program. Plaintiff claims that because the first three steps were not available to her, it would be unfair and inequitable for the Court to enforce a contract that could run only one-way. The Dispute Resolution Guide notes that the dispute resolution system is a "four-stage plan" where "the last stage of the Program involves final and binding arbitration."

◼ Although the Court is troubled by the fact that the Arbitration Agreement and the Dispute Resolution Guide bear the "SAIC" insignia, it seems clear that a reasonable person would have understood that the intent of the Agreement was to bind plaintiff and employer. This is especially true if the reasonable person is a highly-skilled attorney, as this plaintiff is. While plaintiff is correct that the Dispute Resolution Guide was distributed to plaintiff without the disclaimer that steps 1–3 no longer apply, looking at the four corners of the Arbitration Agreement, the parties expressly agreed to be bound only by the arbitration provision. Included in the "Mutual Agreement to Arbitrate Claims", was the provision, written in all caps, that read: "EMPLOYEE AGREES THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN SAIC AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT. EMPLOYEE HAS VOLUNTARILY ENTERED INTO THE AGREEMENT WITHOUT RELIANCE ON ANY PROVISION OR REPRESENTATION BY SAIC OTHER THAN THOSE CONTAINED IN THE AGREEMENT." Def.'s Mot. Attach. 4, Ex. 1 at B–2. Because, the Arbitration Agreement does not mention the other three steps in the Dispute Resolution Guide, the four corners of the Agreement only bind the parties to arbitrate. In addition, despite plaintiff's contention, there was valid consideration for plaintiff's agreement to arbitrate— NSI/VeriSign agreed to employ her, and

the ability to enforce the Arbitration Agreement was mutual. Mutual agreements to arbitrate are independently sufficient forms of consideration. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir.2003). Therefore, regardless of the reliance plaintiff may have placed on Dispute Resolution Guide, the Agreement speaks only to arbitration and should be enforced.

■ Further, plaintiff's arguments that the Navigator is inconsistent with the Agreement to arbitrate and that the Agreement is superseded by the issuance of VeriSign's policy are not persuasive. VeriSign policy states that "[n]ot all VeriSign policies and procedures are set forth in this Navigator." Any pre-established policies that are not contradicted by the issuance of the Navigator are considered valid policies. Moreover, the cover of the Navigator states that it is not a contract. Thus, because the Navigator does not speak to the Arbitration Agreement, the Navigator does not supersede or negate plaintiff's binding contractual promise to arbitrate.

■ In order for an arbitration agreement to be enforceable, the D.C. Circuit has required that it: (1) provide for a neutral arbitrator; (2) provide for more than minimal discovery; (3) require a written award; (4) provide for all types of relief that would otherwise be available in court, and (5) not require employees to pay either unreasonable costs or any arbitrator's fees or expenses as a condition of access to the arbitration forum. *See Cole v. Burns International Security Services*, 105 F.3d 1465, 1484 (D.C.Cir.1997).

■ Plaintiff argues that the Arbitration Agreement does not meet the standard laid out by the D.C. Circuit because the arbitration provision does not provide for meaningful discovery. Moreover,

plaintiff claims that while the Arbitration Agreement states that it adopts the rules of the American Arbitration Association ("AAA"), the discovery rules in the Arbitration Agreement have been re-written and slant in favor of the company.

While defendant maintains that the rules and procedures in the Arbitration Agreement provide for sufficient discovery, NSI/VeriSign has agreed to proceed with the arbitration and all discovery under the AAA Rules. Def. Reply at 12. Thus, the Court need not determine whether the discovery provisions in the Arbitration Agreement are sufficient. Moreover, the substitution of a new discovery procedure is not problematic because the Arbitration Agreement has a severability clause: "Should any portion of the Agreement be found to be unenforceable, such portion will be severed from the Agreement, and remaining portion shall continue to be enforceable." Def.'s Mot. Attach. 4, Ex. 1 at B–2. Therefore, the Court need only sever the discovery provision portion of the Agreement. *See Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680–81 (8th Cir.2001).

*2. The Arbitration Agreement encompasses the claims raised in plaintiff's complaint.*

The Arbitration Agreement provides that plaintiff "will settle by arbitration all statutory, contractual and/or common law claims" including any claims of "discrimination" or "retaliation" or for "violation of any federal, state, or other governmental law, statute, regulations or ordinance." Def.'s Mot. Attach. 4, Ex. 1 at B–1. Plaintiff's claims of discrimination and retaliation are encompassed in the Agreement.

*C. The Court shall Stay the Complaint pending arbitration.*

The FAA provides that once arbitration is compelled, the trial should be stayed

until arbitration is complete. 9 U.S.C. § 3. Because arbitration is compelled in this case, this case will be stayed pending the completion of arbitration.

*D. An arbitration provision preempts a trial de novo unless an exception applies.*

 The D.C. Circuit noted that judicial review of arbitration awards pursuant to an employment agreement to arbitrate is limited to: (1) the enumerated reasons in the FAA, 9 U.S.C. § 10; (2) when the award is contrary to some explicit, well-defined, and dominant public policy; (3) when the award is "in 'manifest disregard of the law.'" *Cole v. Burns International Security Services*, 105 F.3d 1465, 1486 (D.C.Cir.1997). In addition, the D.C. Circuit accepted the assumption that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum. *Id.*

Plaintiff attempts to argue that the Supreme Court and other courts have held that a prior arbitration cannot preclude a trial de novo in a judicial forum for employment discrimination claims. *See, e.g. Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *Alexander*, however, involved a collective bargaining agreement rather than an individual employment agreement. In *Hilliard v. National Council of Senior Citizens*, the court explained that arbitration clauses in the context of a collective bargaining agreement, which are fashioned with group interest in mind, should be viewed differently than individual agreements, where a person is able to consider her own interest. 1992 U.S. Dist. Lexis 7493, *4–5 (D.D.C. May 20, 1992). Moreover, *Alexander* and its progeny were not decided pursuant to the FAA, a statute that reflects a "liberal federal policy favoring arbitration." *Id.*

In addition, plaintiff attempts to argue that when Congress amended Title VII, Congress emphasized that alternative methods of dispute resolution in discrimination cases were not intended to replace the aggrieved employee's statutory rights: "The committee emphasizes ... that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII." HR Rep. No. 40(1) 102nd Cong. 1st Sess., reprinted in 1991 U.S.C.C.A.N. 549, 635.

In addressing the exact quote from the House Report that plaintiff relies on, the District of Columbia Court of Appeals rejected the argument that the report language compelled the finding of a right to a post-arbitration de novo trial. *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299, 1304–05 (D.C.1994).

Thus, unless plaintiff can meet one of the conditions espoused in *Cole*, plaintiff is not entitled to a post-arbitration de novo trial. Regardless, the Court shall stay the case pending the completion of arbitration.

## IV. Conclusion

While the Court remains troubled that defendant distributed the Dispute Resolution Guide to plaintiff without the disclaimer that steps 1–3 no longer applied, the four corners of the Mutual Agreement to Arbitrate Claims bound the parties only to arbitrate their claims.

This case will remain stayed on the active calendar of the Court until arbitration is complete.

An appropriate Order accompanies this Memorandum Opinion.