Timothy R. BOOKER, Plaintiff,

v.

ROBERT HALF INTERNATIONAL, INC. Defendant.

No. CIV.A. 01–1127(JDB).

United States District Court, District of Columbia.

April 28, 2004.

1. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Robert Scott Oswald, Employment Law Group, PLLC, Washington, DC.

Anita Barondes, Seyfarth Shaw, Washington.

Chevanniese Smith, Seyfarth Shaw, Washington, DC.

Robert J. Gregory, U.S. Equal Employment Opportunity Commission, Washington, DC.

## MEMORANDUM OPINION

BATES, District Judge.

Plaintiff Timothy R. Booker ("plaintiff") has sued his former employer, defendant Robert Half International, Inc. ("defen-

dant"), under the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 2–1401.01 to 2–1411.06 (2001), claiming that he was constructively discharged on the basis of race in violation of his rights. In response, defendant has moved to dismiss the complaint and compel plaintiff to pursue arbitration in accordance with the Employment Agreement ("Agreement") between the parties dated April 7, 1996, and plaintiff has opposed that motion. The Court concludes that most of plaintiff's challenges to the enforcement of the arbitration clause of the Agreement are not well-taken. However, the arbitration clause includes a plainly unenforceable provision excluding punitive damages as a remedy. Defendant's motion therefore ultimately raises two issues: the ability of defendant unilaterally to modify the arbitration clause by agreeing that punitive damages will be available and the severability of the punitive damages limitation. In the end, the Court grants defendant's motion to compel arbitration, with the unenforceable punitive damages limitation severed.

## BACKGROUND

The relevant background facts are not in dispute. Plaintiff was employed with defendant from April 1996 until February 2001, and at the outset of his employment he signed the Agreement establishing the terms and conditions of his employment. The Agreement contained an arbitration clause, which states in full:

18. *Arbitration.* Any dispute or claim arising out of or relating to Employee's employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving application of the injunctive relief provided by Section 10) shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. The parties agree that punitive damages may not be awarded in an arbitration proceeding required by this Agreement.

Plaintiff was allegedly constructively discharged by defendant in February 2001. He challenged his discharge through an action under the DCHRA filed in the Superior Court of the District of Columbia on April 24, 2001, alleging race discrimination. That action was removed to this Court. Thereafter, defendant requested that plaintiff submit his claims to arbitration under the Agreement. In an attempt to address concerns raised by plaintiff's counsel, defendant agreed that it would pay all arbitration fees in excess of any fees and costs plaintiff would be required to pay to pursue a statutory claim in court, and also agreed to "reasonable discovery" and that all remedies available under the DCHRA, including punitive damages, would be available to plaintiff in arbitration. Subsequently, defendant agreed to utilize the American Arbitration Association Employment Arbitration Rules rather than the Commercial Rules called for under the arbitration clause, because the former arguably provide greater discovery procedures for plaintiff.

Notwithstanding these concessions by defendant, the parties were unable to reach an agreement that plaintiff's claim would proceed through arbitration. Defendant therefore filed its motion to dismiss and compel arbitration. Plaintiff challenges the enforceability of the arbitration clause of the Agreement, contending that there was no meeting of the minds

with respect to arbitration of plaintiff's statutory claim, that enforcement of the arbitration provision would be unconscionable, that there was no mutuality of obligation, that the arbitration clause does not provide for meaningful discovery, and that the exclusion of punitive damages is unlawful. The Equal Employment Opportunity Commission ("EEOC") has been granted permission to participate in this action as *amicus curiae* in support of plaintiff, focusing on the punitive damages exclusion. After a hearing, the Court requested supplemental briefing from the parties and the EEOC on the issue of severability under District of Columbia law.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption favoring the enforcement of arbitration agreements, and doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (arbitration agreements must be rigorously enforced); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Arbitration should be ordered unless it can be said with certainty that the arbitration provision cannot be interpreted to cover the dispute. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This "liberal federal policy favoring arbitration agreements, manifested by . . . the Act as a whole, is at bottom a policy guaranteeing

the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

However, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. 1415. Thus, whether or not the dispute must be arbitrated is a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Parties cannot be required to arbitrate unless they have agreed to do so, and the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 759 (D.C.Cir.1988). It is the court, not the arbitrator, that must decide whether a dispute is subject to arbitration: "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

As established by the Supreme Court, a court's initial task "is to determine whether the parties agreed to arbitrate [the] dispute," bearing in mind the strong federal policy in favor of arbitration. *Mitsubishi Motors*, 473 U.S. at 626, 105 S.Ct. 3346. If the court concludes that there was an agreement to arbitrate the relevant dispute, then it must assess "whether legal constraints external to the parties' agree-

ment foreclosed the arbitration of those claims." *Id.* at 628, 105 S.Ct. 3346.

Here, the arbitration clause in the Agreement provides that "[a]ny dispute or claim arising out of or relating to [plaintiff's] employment or any provision of this Agreement ... shall be submitted to arbitration." The Supreme Court has held that the coverage of the FAA extends to employment contracts. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The language "arising out of or relating to" the underlying contract or agreement has been interpreted broadly by the Supreme Court. *See Mitsubishi Motors,* 473 U.S. at 624 n. 13, 105 S.Ct. 3346 ("arise between [the parties] out of or in relation to" is a "broad clause"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("arising out of or relating to" is a "broad arbitration clause"). There is no question, then, that the employment dispute presented in plaintiff's Complaint is within the language of the arbitration clause as broadly construed consistent with the direction of the Supreme Court. The question remains, however, whether the parties entered into an enforceable agreement to arbitrate. If so, the Court must also assess whether there is some competing statute or policy sufficient to outweigh the strong federal policy favoring arbitration, and hence to foreclose arbitration of the dispute raised by plaintiff. *See Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. 3346.

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/Esg, Inc.,* 215 F.Supp.2d 143, 146 (D.D.C.2002). As observed earlier, "[t]he 'first principle' of arbitrability, the Supreme Court [has] emphasized, is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *National R.R. Passenger Corp.,* 850 F.2d at 759 (quoting *AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. 1415). Arbitrators derive power from the parties' agreement to submit their disputes to arbitration; "a court may not override that agreement by itself deciding such a dispute." *Id.*

State contract law governs whether there is an enforceable agreement to arbitrate. *First Options of Chicago,* 514 U.S. at 943–44, 115 S.Ct. 1920. Here, that is District of Columbia law because there is no choice of law provision in the Agreement designating some other law to be followed.[1] Under District of Columbia contract law, "the determination of wheth-

---

1. Section 15 ("Governing Law") of the Agreement designates as governing "the laws of the state in which an activity occurred or threatens to occur and with respect to which legal and equitable relief is sought." The parties agree that is the District of Columbia. Normally, in the District of Columbia in cases involving contract disputes, the "significant relationship test" drawn from the Restatement governs choice-of-law analysis. *See Ideal Electronic Security Co. v. Int'l Fidelity Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir.1997); Restatement (Second) of Conflict of Laws § 188 (1971). Here, use of that test would also result in the application of District of Columbia law.

er the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contract between the parties." *Bailey v. Fed. Nat'l Mortgage Ass'n,* 209 F.3d 740, 746 (D.C.Cir.2000). Defendant must establish that the arbitration clause in the Agreement is a valid contract between the parties: "the party asserting the existence of a contract [to submit disputes to arbitration] has the burden of proving its existence." *Id.* at 746. However, "[t]he party resisting arbitration [*i.e.,* plaintiff] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson,* 215 F.Supp.2d at 150; *see Green Tree Fin'l Corp.-Alabama v. Randolph,* 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (party resisting arbitration has initial burden of proof regarding issue of unenforceability of arbitration agreement).

If an arbitration agreement is valid and enforceable, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. How the parties style the motion seeking arbitration is not determinative. Rather, if the party opposing arbitration contends that no agreement to arbitrate was entered, which effectively raises the issue whether there was a meeting of the minds on the agreement to arbitrate, the standards for resolving a summary judgment motion pursuant to Fed.R.Civ.P. 56 should be applied. *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 52 n. 9 (3rd Cir.1980). Hence, "the proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs Rule 56 motions." *Brown v. Dorsey & Whitney, LLP,* 267 F.Supp.2d 61, 67 (D.D.C.2003).

Thus, it is appropriate to grant a party's motion to compel arbitration when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking to compel arbitration bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the non-movant's statements should be accepted as true and all inferences should be drawn in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### *ANALYSIS*

Plaintiff raises five basic challenges: (1) that there was no meeting of the minds, (2) that there was no mutuality of obligation, (3) that the arbitration clause of the Agreement is unconscionable, (4) that the limitation on discovery is unenforceable, and (5) that the limitation on punitive damages is unenforceable. The first three challenges go to whether there is an agreement between the parties to arbitrate. The fourth and fifth challenges address whether there are policy reasons that foreclose enforcement of an agreement to arbitrate, and include questions involving the ability of defendant unilaterally to modify the parties' agreement and the severability of the punitive damages limitation.

## I. Did the Parties Agree to Arbitration?

■ Plaintiff's argument that no agreement to arbitrate his constructive discharge claim was entered by the parties is unpersuasive. Employment contracts are within the FAA and the federal policy strongly favoring arbitration. *See Circuit City Stores,* 532 U.S. at 119, 121 S.Ct. 1302. Statutory employment claims such as are asserted by plaintiff are subject to arbitration: "federal statutory claims may be the subject of arbitration agreements . . . enforceable pursuant to the FAA because the agreement only determines the choice of forum." *Waffle House,* 534 U.S. at 295 n. 10, 122 S.Ct. 754; *see Cole v. Burns Int'l Security Servs., Inc.,* 105 F.3d 1465, 1478–82 (D.C.Cir.1997) (Title VII claims subject to arbitration); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (ADEA claims subject to arbitration). Moreover, the broad language of the arbitration clause here—"[a]ny dispute or claim arising out of or relating to Employee's employment or any provision of this Agreement, whether based on contract or tort or otherwise"—surely covers plaintiff's constructive discharge claim in light of the Supreme Court's broad construction of such "arising out of or relating to" language. *See Mitsubishi Motors,* 473 U.S. at 624 n. 13, 105 S.Ct. 3346; *Prima Paint,* 388 U.S. at 398, 87 S.Ct. 1801.

Plaintiff nonetheless contends that the arbitration clause does not apply to his statutory claims because the language "based on contract or tort or otherwise" does not specifically mention statutory claims. The Supreme Court has squarely rejected that position. In *Mitsubishi Motors,* the arbitration clause made no specific mention of statutory claims, *see* 473 U.S. at 617, 105 S.Ct. 3346, but the Court rejected any presumption against arbitration of statutory claims given the "healthy re-

gard for the federal policy favoring arbitration." *Id.* at 626, 105 S.Ct. 3346. A "clear and unmistakable" waiver is *not* required for a valid agreement to arbitrate statutory claims because the agreement only determines the forum, but does not waive any substantive statutory rights. *See Waffle House,* 534 U.S. at 295 n. 10, 122 S.Ct. 754; *Circuit City,* 532 U.S. at 123–24, 121 S.Ct. 1302; *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647.

■ Plaintiff's contention that there was no "meeting of the minds" by the parties is equally unavailing. Under District of Columbia law, "a signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Emeronye v. CACI Int'l, Inc.,* 141 F.Supp.2d 82, 86 (D.D.C.2001) (citing *Davis v. Winfield,* 664 A.2d 836, 838 (D.C.1995) ("Mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement.")). Plaintiff's position has been consistently rejected by this District Court when the plaintiff signed the agreement, but does not recall doing so, or contends that the arbitration provision was not adequately explained to him. *See Dorsey & Whitney,* 267 F.Supp.2d at 79–80 (employer has no affirmative obligation to ensure employee read dispute resolution policy or to explain it to her); *Nur v. K.F.C., USA, Inc.,* 142 F.Supp.2d 48, 51 (D.D.C.2001) (employer has no obligation to recommend that an employee "think the matter through before signing an arbitration agreement"); *Emeronye,* 141 F.Supp.2d at 85–86 ("[t]he fact that plaintiff does not recall signing the agreement, that she had other paperwork to complete, or that the arbitration provision was not explained to her is insufficient to render the contract unenforceable").

■ So, too, here plaintiff has not shown any "special circumstances" that would refute his assent to the arbitration clause when he signed the Agreement, and relieve him of the obligation to arbitrate his claims. Plaintiff contends that alleged representations by Mr. Scileppi regarding the focus of the Agreement on trade secrets and non-competition should exclude his discrimination claim from arbitration. At most, however, plaintiff can show that the non-compete and non-disclosure provision was the "main point" of the Agreement, but there is no evidence to suggest that any representative of defendant intended to limit the arbitration clause in any way, or even that there was any discussion at all with plaintiff concerning the arbitration clause. Hence, it is the plain language of the arbitration clause itself—which, as discussed above, certainly covers the plaintiff's statutory discrimination claim—which must govern here.[2] Plaintiff's effort to contradict the plain meaning of the arbitration clause with extrinsic evidence of alleged statements by employees of defendant must be rejected. Plaintiff's objective manifestation of assent to the unambiguous language of the arbitration clause governs his rights and liabilities under the "objective law" of contracts. *See Minmar Builders, Inc. v. Beltway Excavators, Inc.,* 246 A.2d 784, 786 (D.C. 1968); *see also NRM Corp.,* 758 F.2d at 681 n. 14; Restatement (Second) of Contracts §§ 17, 19(3) (1981). Having signed the Agreement, plaintiff is "presumed to know and assent to its contents." *Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 108 (S.D.N.Y.1995) ("Given the required healthy regard to the strong federal policy favoring arbitration, an argument such as the one made by Plaintiff [ ] that one did not have time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge."). Failing to read or understand an arbitration agreement, or an employer's failure to explain it, simply will not constitute "special circumstances" warranting relieving an employee from compliance with the terms of an arbitration agreement that she signed. *See Dorsey & Whitney,* 267 F.Supp.2d at 81–82; *Nur,* 142 F.Supp.2d at 51; *Emeronye,* 141 F.Supp.2d at 86–87.

■ Plaintiff also contends that there was no "mutuality of obligation" within the arbitration clause of the Agreement because defendant is able to seek judicial injunctive relief while plaintiff must arbitrate all employment-related claims. Under modern contract law, however, so long as a contract is supported by sufficient consideration there is no requirement of equivalent promises or "mutuality of obligation." *See* Restatement (Second) of Contracts § 79 (1981); 2 *Corbin on Contracts* § 6.1, at 197 (1995). Federal courts addressing the issue recently have consistently concluded that arbitration agreements contain adequate consideration, need not have mutuality or equivalency of obligation, and therefore are enforceable. *See, e.g., Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 667–68 (6th Cir.2003) (*en banc*) (arbitration agreement supported by sufficient consideration and mutuality of obligation under Ohio law and the Restatement (Second) of Contracts); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603–04 (3rd Cir.2002) ("when both parties have agreed to be bound by arbi-

---

**2.** Whether a contract is ambiguous is a question of law for the court. *See E.P. Hinkel & Co. v. Manhattan Co.,* 506 F.2d 201, 204 (D.C.Cir.1974); *see also NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 681–82 (D.C.Cir.1985) ("where the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties").

tration, adequate consideration exists and the arbitration agreement should be enforced"); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180–81 (3rd Cir.1999) (arbitration contract need not have mutuality of obligation as long as the contract is supported by consideration); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir.1999); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378 (4th Cir. 1998); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 451–53 (2nd Cir.1995) (mutuality of obligation or remedy not required if arbitration agreement supported by consideration). Plaintiff has provided no authority from the District of Columbia or any other jurisdiction to support his position that an inequality in obligation under the arbitration clause renders it unenforceable.

■ Finally, plaintiff fares no better with his claim of "unconscionability." In examining whether a contract is unconscionable, the court must determine whether one party lacked a meaningful choice and the contract terms were unreasonably favorable to the other party. *See Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1251 (D.C.1990); *see also Smith, Bucklin & Assoc., Inc. v. Sonntag*, 83 F.3d 476, 480 (D.C.Cir.1996); *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965). "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647. Moreover, plaintiff had a fair opportunity to understand the terms of the Agreement, including the arbitration clause, which were not "hidden in a maze of fine print," and thus he had a meaningful choice when he decided to sign the Agreement. *See Walker–Thomas*, 350 F.2d at 449. There is no evidence that plaintiff was compelled to

sign the Agreement out of a fear of unemployment if he decided not to. What is important is that plaintiff had the *opportunity* to read and understand the Agreement before he signed it; that he "may not have comprehended the implications of his decision is irrelevant as to whether the agreement is valid." *Nur*, 142 F.Supp.2d at 51. Nor can the Court conclude that the terms of the arbitration clause in the Agreement "unreasonably favor" the employer defendant. It is clear by now that the federal courts have concluded otherwise. *See Circuit City Stores*, 532 U.S. at 123, 121 S.Ct. 1302 ("we have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. . . . Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which involves smaller sums of money than disputes concerning commercial contracts.") (citations omitted); *Cole*, 105 F.3d at 1487 (arbitration agreement "not unconscionable or otherwise unenforceable" where judicial review of arbitration award is available); *Dorsey & Whitney*, 267 F.Supp.2d at 76–77.

This Court therefore rejects plaintiff's argument that there was no agreement between the parties to arbitrate plaintiff's statutory discrimination claim. The developing federal case law is overwhelmingly to the contrary. What remains, then, is the question whether the limitations on discovery and punitive damages in the arbitration clause raise policy reasons that foreclose enforcement of the agreement to arbitrate.

## II. *The Discovery Limitation*

■ In *Cole*, the D.C. Circuit concluded that an arbitration agreement was enforceable so long as it "(1) provides for neutral

arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum." 105 F.3d at 1482 (emphasis original). Thus, one requirement for an enforceable arbitration agreement is that "more than minimal" discovery be permitted.

■ The court in *Cole* found that the discovery permitted under the AAA employment arbitration rules was sufficient. *See* 105 F.3d at 1480–82. However, the arbitration clause in the Agreement between plaintiff and defendant provides that arbitration will be conducted "pursuant to the commercial arbitration rules of the American Arbitration Association." With respect to discovery, the commercial rules empower the arbitrator to "direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called." Plf's. Response to Def's. Motion to Dismiss, Ex. 3 (Commercial Rules, R–23). The commercial rules thus permit the arbitrator to direct the exchange of information, rather than mandating specific discovery procedures, which is the same approach taken in the employment rules approved in *Cole*. But the latter rules go a little further, including a provision granting the arbitrator "the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise," as the arbitrator believes is needed to fully explore the issues in dispute. *See* 105 F.3d at 1480. Still, under both sets of rules, the parties and the arbitrator have sufficient discretion to develop a discovery plan that will enable a plaintiff fairly to present his claims. Plaintiff contends, nonetheless, that in promulgating distinct rules for employment disputes, the AAA has implicitly acknowledged that the discovery provided under the commercial rules is inadequate to protect the rights of claimants in employment disputes.

As recognized in *Cole*, 105 F.3d at 1481, the Supreme Court has rejected the contention that arbitration is inconsistent with the vindication of statutory employment claims because discovery in arbitration is more limited than in the federal courts. *See Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647. The *Gilmer* Court concluded that discovery procedures less extensive than those available in the federal courts still were sufficient to allow ADEA plaintiffs "a fair opportunity to present their claims," noting that an agreement to arbitrate necessarily includes a trade of more elaborate court procedures for "the simplicity, informality, and expedition of arbitration." *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. 3346). The discovery permitted under the commercial rules is, in this Court's view, comparable to discovery typically provided in arbitration settings and thus is consistent with both the rationale of *Gilmer* and the requirement in *Cole* that an arbitration agreement provide "more than minimal discovery." Certainly, there is no express preclusion of any discovery device under the commercial rules, since the arbitrator may in his discretion, "consistent with the expedited nature of arbitration," fashion any discovery plan, process or tool needed to permit full exploration of the dispute. In short, an opportunity for reasonable discovery is provided under Rule R–23 of the commercial rules, and also under provisions requiring an administrative conference and a preliminary hearing during which the parties may agree upon, or the arbitrator may require, reasonable discovery. *See* Commercial Rules, R–10 & R–22.

The strong federal policy favoring arbitration of disputes further supports en-

forcement of the arbitration clause with discovery as provided under the commercial rules. Because no particular discovery is precluded, and the determination of appropriate discovery is left to the parties and the arbitrator, this is similar to a situation where the arbitration agreement is silent with respect to discovery. As the D.C. Circuit recognized in *Cole* with respect to a cost-splitting provision, such silence will not render an arbitration clause unenforceable because an interpretation that renders a contract lawful is preferable to one that renders it unlawful. 105 F.3d at 1485. Moreover, one can reasonably anticipate that the arbitrator will be expansive rather than restrictive in permitting discovery consistent with the evolution within the AAA to the broader employment rules. Finally, it must be noted that defendant has agreed here both to engage in any reasonable discovery and specifically to utilize the employment rules to govern discovery in arbitration. Such a unilateral agreement, if it constituted a change or waiver of a provision of the Agreement, would be questionable for the reasons discussed below. But given the permissive and unlimited discovery potentially available under both the commercial rules and the employment rules, the Court concludes that defendant's concession that the employment rules should apply to govern discovery in arbitration should be allowed.

## III. *The Punitive Damages Limitation*

### A. *Enforceability*

■ Unlike the provision regarding discovery, the punitive damages exclusion in the Agreement is plainly unenforceable. Section 18 of the Agreement provides: "The parties agree that punitive damages may not be awarded in an arbitration proceeding required by this Agreement." Under *Cole,* an arbitration agreement is enforceable only if it "provides for all of the types of relief that would otherwise be available in court." 105 F.3d at 1482. The arbitration clause of the Agreement does not do so in light of the provision barring punitive damages, and hence cannot pass the *Cole* test.[3]

■ Numerous federal courts have found that provisions in arbitration agreements excluding or limiting the availability of punitive damages violate public policy and are unenforceable. *See, e.g., Morrison,* 317 F.3d at 670–74; *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 895 (9th Cir.), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002); *Perez v. Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280, 1286 (11th Cir.2001); *Dorsey & Whitney,* 267 F.Supp.2d at 77 (labeling punitive damages exclusion as a "presumably prohibitive provision"); *cf. Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 681–83 (8th Cir.2001) (finding punitive damages provision invalidated by district court to be severable). This Court agrees, and therefore finds that the provision in the arbitration clause of the Agreement between plaintiff and defendant excluding punitive damages cannot be enforced. A limitation on the remedies available to a claimant undermines the rights protected by statutes such as Title VII and the DCHRA, and hence is an impermissible

---

**3.** The Court disagrees with defendant's position that the validity of the punitive damages provision is a question properly submitted to the arbitrator. Under *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. 3346, the court must assess whether public policy or other external legal constraints foreclose arbitration, as plaintiff argues here. As noted, many federal courts have addressed the enforceability of punitive damages and other provisions in arbitration agreements challenged on public policy grounds.

limitation on the substantive rights afforded by those statutes. *See Gilmer*, 500 U.S. at 26–27, 111 S.Ct. 1647; *Morrison*, 317 F.3d at 670 ("The limitation on remedies provision ... undermines both the remedial and deterrent principles of Title VII."). In short, this Court agrees with the conclusion of the *en banc* Sixth Circuit in *Morrison, id.* at 673:

> Because the limitation on remedies found in the Circuit City arbitration agreement significantly undermines Title VII's remedial purpose of making victims of discrimination whole and its deterrent purposes of forcing employers to eliminate and prevent discriminatory practices in the workplace, we hold that the provision at issue in this case was not enforceable.

### B.  *Unilateral Waiver*

▉  The question remains, then, whether the rest of the arbitration clause is enforceable, or whether instead the presence of the unenforceable punitive damages exclusion condemns the parties' entire agreement to arbitrate.  Defendant's initial attempt to save the remainder of the arbitration clause is premised on its unequivocal agreement that punitive damages will be available to plaintiff in arbitration—just as defendant agreed that discovery under the employment rules would be available.  But whereas the application of different discovery procedures would not necessarily constitute a material modification of the Agreement—given the similarity of discovery under the two sets of AAA rules—the same cannot be said of defendant's unilateral attempt to modify the Agreement to make punitive damages available notwithstanding the unequivocal statement in the arbitration clause that "punitive damages may not be awarded" in arbitration.

Several courts have concluded that concessions as to punitive damages limitations, discovery constraints, or cost-splitting arrangements should be allowed, and arbitration agreements enforced as modified.  *See Dorsey & Whitney*, 267 F.Supp.2d at 77 (punitive damages); *Nelson*, 215 F.Supp.2d at 157 (cost-splitting); *Nur*, 142 F.Supp.2d at 52 (cost-splitting); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56–57 (1st Cir.2002) (cost-splitting); *Sapiro v. VeriSign*, 310 F. Supp.2d 208, 2004 WL 605204 at *5 (D.D.C. 2004) (discovery). But unlike those cases, here the parties' Agreement expressly requires in Section 16 that "[n]o provision of this Agreement may be changed or waived except by an Agreement in writing signed by the party against whom enforcement of any such waiver or change is sought." Certainly a pledge by defendant that punitive damages will be available in arbitration would affect a "change or waiver" of the provision in the Agreement excluding punitive damages.  But there is no written agreement signed by plaintiff, and indeed plaintiff vigorously disputes the right of defendant unilaterally to change the agreement so as to permit punitive damages in arbitration.

A cardinal rule of contract interpretation is that wherever possible the parties' intent shall be given full effect.  *See Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 927 (D.C.1992).  Moreover, when the contract term is unambiguous, the intent of the parties is to be determined from the language of the provision alone.  *See Hart v. Vermont Investment Ltd.*, 667 A.2d 578, 583 (D.C.1995); *NRM Corp.*, 758 F.2d at 681–682; *WMATA v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980).  Indeed, the parties' "intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors*, 473 U.S. at 626, 105 S.Ct. 3346. Here, the language of the Agreement is

unambiguous and the parties' intent is clear. The Court thus concludes that the express requirement that any change to or waiver of the Agreement be in a writing signed by plaintiff ("the party against whom enforcement of any such waiver or changes is sought") precludes defendant from unilaterally altering the Agreement to make punitive damages available in arbitration.

## C. *Severability*

■ Defendant's second argument is that the Court should sever the unenforceable punitive damages exclusion, and thereby permit enforcement of the arbitration clause without any limit on the availability of punitive damages. The Court is again guided by the well-established principle that the parties' intent, particularly as set forth in an unambiguous contract term, should be given effect. In Section 13 of the Agreement, plaintiff and defendant unequivocally agree as follows: "The provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions." Under both District of Columbia and federal case law, the Court concludes that it should give effect to that clearly expressed intent of the parties, sever the offensive provision excluding punitive damages, and otherwise enforce the arbitration clause in the parties' Agreement.[4]

Case law in the District of Columbia, drawing from the Restatement, supports severability of an invalid contractual provision such as the punitive damages exclusion. Hence, one invalid provision, even if violative of public policy, does not necessarily invalidate an entire contract. *EDM Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 390 (D.C.1991) ("[a] lawful promise made for a lawful consideration is not invalid by reason only of an unlawful promise made at the same time and for the same consideration"). Even without a severability clause, "if the obnoxious feature of a contract can be eliminated, without impairing its symmetry as a whole, the courts will be inclined to adopt this view as the one most likely to express the intention of the parties." *Id.* Relying on the Restatement (Second) of Contracts, the D.C. Court of Appeals has supported severance where a covenant-not-to-compete clause overreached in scope, noting that "where less than all of an agreement is unenforceable on public policy grounds, a court may nevertheless enforce the rest of the agreement." *Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615, 617 (D.C. 1989).[5]

The Restatement provides that part of a term may be treated as unenforceable if the party seeking enforcement obtains the term in good faith and fairly. Restatement (Second) of Contracts § 184(2) (1981). Where one term in an agreement is unenforceable on grounds of public policy, "a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct

---

**4.** The Court rejects the position of plaintiff and the EEOC that the severability provision of the Agreement does not apply because the punitive damages limitation is unlawful, not simply "unreasonable." The severability provision reflects a clear understanding that all provisions of the Agreement are severable, and the language "unreasonable and invalid" is sufficiently broad to include any reason a court decides that a provision cannot be enforced.

**5.** In the District of Columbia, the Restatement is authoritative absent well-developed judicial doctrine. *See id.* at 618, 105 S.Ct. 3346; *Steele v. Isikoff*, 130 F.Supp.2d 23, 32 (D.D.C. 2000).

if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." *Id.* at § 184(1). Hence,

> [i]f that performance [of the invalid promise] is not an essential part of the agreed exchange, a court may enforce all but the part that contravenes public policy. For example, a promise not to compete that is unreasonably in restraint of trade will often not invalidate the entire agreement of which it is a part. Whether the performance is an essential part of the agreed exchange depends on its relative importance in the light of the entire agreement between the parties.

*Id.* at § 184, cmt. a. Even with an unconscionable term, a court may sever it and enforce the remainder of the contract. *Id.* at § 208.

These general principles drawn from the Restatement and District of Columbia case law have particular force in a context where, as here, the unenforceable provision is one restricting remedies. Then, the general rule is that the validity of the parties' bargain in other respects is not drawn into question, and the improper remedial limitation may be disregarded as not being an essential part of the consideration. *See* 6A *Corbin on Contracts,* § 152 (1995). Indeed, an unenforceable limitation on remedies is precisely the type of provision appropriate for severance. "An illegal portion of an agreement that relates to the remedy is more readily separable." *Williston on Contracts,* § 19:69, at 543 (4th ed.1998) (citing Restatement (Second) of Contracts §§ 183, 184 cmt. a).

Recent federal case law confirms the propriety of severing an unenforceable limitation on punitive damages. In *Morrison,* the *en banc* Sixth Circuit concluded under Ohio law that a severability clause whose applicability was uncertain should be applied to sever unenforceable cost-splitting and remedies-limiting provisions from an otherwise enforceable arbitration agreement. *See* 317 F.3d at 674–75. The court was persuaded to do so because "Supreme Court precedent dictates that we resolve any doubts as to arbitrability 'in favor of arbitration.' " *Id.* at 675 (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927). The *Morrison* court followed the Eighth Circuit decision in *Gannon v. Circuit City Stores, Inc.* 262 F.3d 677, 680 (8th Cir.2001), which held that a severability clause reflected "an unambiguous intent by the parties to sever any terms determined to be invalid and to allow all claims to proceed to arbitration under the remaining provisions of the agreement." "[K]eeping in mind that the FAA evinces a 'liberal federal policy favoring arbitration agreements,' " *id.* at 680 (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927), the court in *Gannon* rejected public policy arguments similar to those raised here by plaintiff and the EEOC, concluding that "[t]he punitive damages clause represents only one aspect of their agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes," *id.* at 681. *See also EEOC v. Astra,* 94 F.3d 738 (1st Cir.1996) (severing from a settlement agreement a provision that contravened public policy); *EEOC v. Cosmair,* 821 F.2d 1085, 1091 (5th Cir.1987) (court may enforce remainder of agreement where one part is unenforceable as violative of public policy).

In response to the District of Columbia and federal case law supporting severance, the plaintiff and the EEOC offer federal public policy arguments. The EEOC stresses that any decision on severance should be made in light of federal policies supporting broad enforcement of anti-dis-

crimination statutes.[6] The EEOC and plaintiff maintain that the severability clause of the Agreement combines with the punitive damages limitation to undermine the statutory protections.

In particular, they assert that allowing an employer to enforce an arbitration agreement after having an objectionable provision severed will give the employer an incentive to overreach by including onerous remedial restrictions, knowing that the worst case scenario is simply having those unlawful restrictions removed. Future employers will then have no incentive to draft agreements that preserve the statutory rights of employees. *See Perez v. Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280, 1286–87 (11th Cir.2001) (severing invalid provision and forcing arbitration "despite the employer's attempt to limit the remedies available would reward the employer for its actions and fail to deter similar conduct by others"). Moreover, the incentive of the employer to include unlawful provisions "could deter an unknowledgeable employee from initiating arbitration, even if they would ultimately not be enforced." *Id.* Hence, the plaintiff and the EEOC argue that, regardless of whether a severability clause should be enforced under ordinary contract principles, when imposed in an employment arbitration agreement it should not be enforced if doing so would undermine statutory protections by encouraging employers to include invalid provisions.

The Eighth Circuit in *Gannon* rejected these same arguments by the EEOC. That court noted that employers would probably not be encouraged to include unlawful

terms in arbitration agreements, given that "time-consuming and expensive litigation" over enforceability would erase the normal advantages of arbitration. 262 F.3d at 682 n. 7. The court distinguished the Eleventh Circuit's reliance on such public policy arguments in *Perez,* because that case did not involve an arbitration agreement containing a severability clause. *Id.* at 683 n. 8. *Gannon* emphasized that the FAA constrains the ability of courts to weigh public policy advantages and disadvantages resulting from enforcement of arbitration agreements, because the Supreme Court has already recognized that the FAA establishes federal public policy favoring enforcement of private agreements to arbitrate. *Id.* at 682 (citing *Mitsubishi Motors,* 473 U.S. at 625–26, 105 S.Ct. 3346). Hence, the public policy arguments were rejected because,

> if we were to hold entire arbitration agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA and severely chill parties from structuring their contracts in the most efficient manner for fear that minor terms eventually could be used to undermine the validity of the entire contract. Such an outcome would represent the antithesis of the "liberal federal policy favoring arbitration agreements."

*Id.* (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927).

There is no evidence here that defendant drafted the Agreement, or the arbitration clause specifically, in bad faith or in an attempt to contravene public policy. The Supreme Court has already rejected

---

**6.** The policies and principles applicable to federal statutes such as Title VII are often applied to state and local laws prohibiting employment discrimination, such as the DCHRA. *See Benefits Communication Corp.* *v. Klieforth,* 642 A.2d 1299, 1303–04 (D.C. 1994) (applying *Gilmer* principles to enforcement of arbitration agreements on claims under DCHRA).

plaintiff's position that an employer's superior bargaining power should lead the Court to invalidate the entire agreement: "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647. Severance of the unlawful punitive damages limitation is, this Court concludes, the appropriate resolution of any conflict between the public policy concerns pressed by plaintiff and the EEOC and the strong public policy favoring enforcement of arbitration agreements frequently emphasized by the Supreme Court. This is not a case of the type noted in *Gannon*, 262 F.3d at 681, where numerous invalid or biased provisions in an agreement combine to undermine the validity of an agreement. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir.2003) (finding unconscionable provisions so numerous that court declined to sever); *Hooters of America v. Phillips*, 173 F.3d 933, 940 (4th Cir.1999) (same); *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1248 (9th Cir.1994) (entire arbitration clause tainted because it was integrated unit containing numerous impermissible provisions). When the parties entered their agreement in 1996, there was no clear precedent in this jurisdiction on the validity of clauses limiting punitive damages, and the law regarding that issue has continued to be in flux across the country; the decision in *Cole* was not issued until the next year. Indeed, inclusion of a severability clause in the Agreement can be viewed as an attempt to recognize the evolving status of legal standards governing arbitration clauses and employment agreements. The absence of bad faith by

defendant in drafting the Agreement is reflected by its reliance on rules promulgated by a well-recognized arbitration association. The Court concludes, therefore, that the punitive damages exclusion in the arbitration clause should be severed, because this is not a case where the employer engaged in bad faith drafting, invalid provisions permeated the entire agreement, or the agreement did not contain a severability clause, which are the contexts in which courts have refused to sever impermissible provisions.

### CONCLUSION

The Court concludes that plaintiff and defendant entered into an agreement to arbitrate that covered plaintiff's statutory claims under the DCHRA. Plaintiff's contentions that there was no meeting of the minds or mutuality of obligation, and that the arbitration clause of the Agreement is unconscionable, are rejected on the facts and the law. The discovery permitted under the arbitration clause satisfies the requirements of *Cole*, and defendant's concession that reasonable discovery is available in arbitration should be allowed because it does not materially change the parties' agreement. Finally, the punitive damages exclusion is plainly unenforceable and cannot be waived unilaterally by defendant because it does effect a change to the Agreement that is not in writing; however, the exclusion should be severed consistent with District of Columbia and federal case law. Defendant's motion to compel arbitration is therefore granted, with the offensive punitive damages exclusion severed from the Agreement.[7] A separate order accompanies this memorandum opinion.

---

7. The Court will dismiss this case, rather than stay it pending completion of arbitration, in accordance with the approach other courts have adopted when all claims must be submitted to arbitration. *See Dorsey & Whitney*, 267 F.Supp.2d at 83 n. 13; *Nelson*, 215 F.Supp.2d at 158.

## ORDER

Upon consideration of defendant's motion to dismiss and to compel arbitration, the several memoranda filed by the parties and by amicus curiae EEOC, and the entire record herein, and for the reasons stated in the Memorandum Opinion issued on this date, it is this *28th* day of April, 2004, hereby

ORDERED that defendant's motion is GRANTED, plaintiff's claims herein are referred to arbitration under the arbitration clause of the parties' Employment Agreement dated April 7, 1996, with the provision excluding punitive damages severed therefrom, and this action is dismissed.